UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN DEBBS, and LIBERTY
NATIONAL TRUST,

      Plaintiffs,

v.                                                  Case No:  2:24-cv-193-JLB-NPM

CDK FUND I SPV, LLC, et. al.,

      Defendants.
_____/

# ORDER

Plaintiffs Kevin Debbs and Liberty National Trust sue CDK Fund I SPV, LLC; CDK Capital Partners I, LLC; Cody Kerns; and Essential Fund Services International, LLC (together, the "Defendants"), alleging that the Defendants violated Federal and State securities laws, *among other things*, by failing to allow Plaintiffs to withdraw their investments from a pooled investment vehicle. (*See* Doc. 1).  Defendants CDK Fund I SPV, LLC, CDK Capital Partners I, LLC, and Cody Kerns (the "Fund Defendants") filed a motion to transfer venue and to dismiss for failure to state a claim.  (Doc. 43).  Plaintiffs responded (Doc. 60), and the Fund Defendants, with leave of Court, replied (Doc. 66).  Upon careful review, the Fund Defendants' motion to transfer venue and to dismiss for failure to state a claim (Doc. 43) is **GRANTED in part,** and the Court transfers this case to the United States District Court for the District of Delaware.[1]

---

[1] As to any other relief in the motion (Doc. 43), the Court denies such relief without prejudice.

## BACKGROUND[2]

On or about September 26, 2022, non-party CDK Fund I, LP (the "Fund") was formed as a Delaware limited partnership. (Doc. 1 at ¶ 31). The Fund focused on offering pooled investments in "stocks and ETFs across different sectors, market capitalization and asset classes, as well as in currencies." (*Id.* at ¶ 32). The Fund's general partner was CDK Capital Partners I, LLC and its investment manager was Kerns Capital Management, LLC. (*Id.* at ¶¶ 30, 33). Defendant Kerns purportedly owned and controlled both CDK Capital Partners I, LLC and Kerns Capital Management, LLC. (*Id.* at ¶ 13).

Plaintiff Kevin Debbs was introduced to Defendant Cody Kerns in early January 2023. (*Id.* at ¶ 30). On January 13, 2023, Plaintiffs Debbs and Liberty National Trust[3] signed a subscription agreement to invest $800,000 in the Fund. (*Id.* at ¶ 43). That same day, Plaintiffs and the Fund executed a Limited Partnership Agreement (the "LPA"). (Doc. 43-1 at 58). Section 12.06 of the LPA provides:

> The parties acknowledge and agree that any claim, controversy, dispute, or action relating in any way to this Agreement, or the subject matter of this Agreement, will be governed solely by the laws of the State of Delaware, without regard to any conflict of laws doctrines. The parties irrevocably consent to being served with legal process issued from the state and federal courts located in Delaware and irrevocably consent to the exclusive personal jurisdiction of the federal and state courts situated in the State of Delaware. The parties irrevocably waive any

---

[2] The facts as alleged in the complaint are taken as true to the extent they are uncontradicted. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). The Court must accept the facts alleged in the complaint as true unless contradicted by affidavits. *Id.*

[3] Liberty National Trust Corporation is a trust formed under the laws of the State of Florida. (Doc. 1 at ¶ 11). Its trustee is Kevin Debbs. (*Id.*).

>  objections to the personal jurisdiction of these courts. Said courts will have sole and exclusive jurisdiction over all claims, controversies, disputes, and actions which in any way relate to this Agreement or the subject matter of this Agreement. The parties also irrevocably waive any objections that these courts constitute an oppressive, unfair, or inconvenient forum and agree not to seek to change venue on these grounds or any other grounds.

(*Id.* at 54). Section 2.07(n) also gives the general partner, CDK Capital Partners I, LLC, the ability to "organize one or more corporations or other entities formed to hold record title, as nominee for the [Fund] (whether alone or together with the other clients) to Securities or funds of the [Fund]." (*Id.* at 15). Plaintiffs then executed a second subscription agreement on January 24, 2023 to invest an additional $300,000 in the Fund, bringing Plaintiffs' total investment in the Fund to $1,100,000. (*Id.* at ¶ 44).

On March 15, 2023, the Fund's administrator sent Plaintiffs a partnership statement for the period of February 1, 2023 through February 28, 2023. (*Id.* at ¶ 45). The statement showed an account value of $1,157,485.71. (*Id.*). This value subtracted the Fund's management fee of $2,291.67 and included accrued performance allocation of $57,485.71. (*Id.*). Four (4) months later, Defendant Kerns and Kerns Capital Management initiated a lawsuit against FxWinning Ltd. (*Id.*). FxWinning is a foreign company organized under the laws of Hong Kong. (*Id.* at ¶ 47). The company, operating as a brokerage firm, offers forex currency and other trading strategies in jurisdictions outside the United States. (*Id.* at ¶¶ 47, 48). Defendants CDK Capital Partners I, LLC and Cody Kerns, together with non-party Kerns Capital Management, LLC, executed a "Customer Agreement" with

3

FxWinning. (*Id.* at ¶ 51). FxWinning also had oversight and control over investor capital in the Fund. (*Id.* at ¶ 46). In their lawsuit, Defendant Kerns and Kerns Capital Management alleged that FxWinning did not perform forex trading or other trading of securities that the Fund had executed. (*Id.* at ¶ 45). Specifically, Defendant Kerns and Kerns Capital Management alleged that no "algo-rhythmic [sic] trading" software was being deployed by FxWinning to generate revenue for the Fund. (*Id.*). Plaintiffs were unaware of this alleged fraudulent scheme. (*Id.* at ¶ 59). Plaintiffs then executed a third subscription agreement in May 2023 to invest an additional $850,000, and later an additional $350,000, in the Fund. (*Id.* at ¶¶ 59, 62).

On June 20, 2023, FxWinning posted a notice on its website that stated that due to unforeseen circumstances, its services would cease on June 22, 2023. (*Id.* at ¶ 67). The Fund then sent another partnership statement to Plaintiffs for the period of May 1, 2024 through May 31, 2023. (*Id.* at ¶ 73). The statement showed an account value of $1,335,679.20. (*Id.*). Plaintiffs allege that the Fund charged a fictitious management fee of $2,565.70 and accrued a fictitious performance allocation of $38,698.50 because "there was no actual forex or other trading generating an underlying profit for the [Fund] and its limited partners, including Plaintiffs." (*Id.*).

During a July 15, 2023, meeting in Las Vegas, Nevada, Justin Freishat, a promoter and later officer and director of CDK Capital Partners I, LLC, advised Plaintiff Debbs that all or substantially all of the Fund's assets and control were

given to FxWinning and at least seventy (70) percent of the Fund's assets were lost. (*Id.* at ¶ 74). Defendant Kerns and non-party Kerns Capital Management then sued FxWinning in Florida state court for common law fraud, violations of the Florida Deceptive and Unfair Trade Practices Act, conspiracy to commit common fraud, negligence misrepresentation, breach of contract, unjust enrichment, and fraudulent transfer. (*Id.* at ¶ 75); *Cody Kerns, et. al., v. FxWinning, LTD., et. al.,* Case No. 23-CA-20202 (Fla. 11th Cir. Ct.). Defendants CDK Capital Partners I, LLC, and Kerns then requested the Fund's former administrator to generate a June 2023 partnership statement for Plaintiffs. (*Id.* at ¶ 78). The former administrator purportedly denied generating such a statement. (*Id.*). Defendants then hired Defendant Essential Fund Services, LLC ("ESFI") as fund administrator on August 16, 2023. (*Id.* at ¶¶ 78, 90).

On September 5, 2023, Defendants CDK Capital Partners I, LLC and Kerns formed CDK Fund I SPV, LLC (the "Special Purpose Vehicle") in Florida. (*Id.* at ¶ 91). The Fund made a capital contribution of $1,253,888.14 of Plaintiffs' monies to the Special Purpose Vehicle. (*Id.*). Plaintiffs then requested a withdrawal of their capital. (*Id.* at ¶ 92). The Fund Defendants failed and refused to respond to Plaintiffs' request. (*Id.*).

EFSI then sent Plaintiffs a statement for their interest in the Special Purpose Vehicle for the period between June 30, 2023 and July 31, 2023. (*Id.* at ¶ 95). The statement showed a balance of $1,163,882.66. (*Id.*). Then, the Special Purpose Vehicle, CDK Capital Partners I, LLC, and Kerns sent Plaintiffs a choice to

Plaintiffs:

>**Liquid Balance Full Release**: Should you wish to exit, you can request to withdraw 100% of your September NAV liquid balance. Do note that this may be approximately 10-15% less than the July NAV, due to certain stock positions being in the red for August and September. In choosing this route, you would formally request an exit as an LP, and upon agreement, sign a document to forfeit your entire SPV value to the GP. Consequently, this will reflect as a loss on your 2023 K1. If this is the option you choose please note the requested redemption will be issued to you by the end of 2023.
>
>**Continue the Partnership**: By choosing this path, you uphold your SPV value, preserving your liquid balance to sustain trading and further support the fund's continued efforts to address the ongoing legal dispute. If, however, you find the need to access some of your liquid funds, we recommend requesting approximately 50% of your liquid balance. For this option, you will receive a K1 detailing the values of both the SPV and liquid balance for 2023, with the associated tax implications for any gains.

(*Id.* at ¶ 96 (emphasis altered)).  Plaintiffs did not accept either option. (*Id.* at ¶ 97). Plaintiffs now sue the Defendants, alleging that they violated Federal and State securities laws, *among other things*, by failing to allow Plaintiffs to withdraw their investments from the Special Purpose Vehicle.  (*See* Doc. 1).

## LEGAL STANDARD

The Supreme Court has held that "federal law, specifically 28 U.S.C. § 1404(a), governs [a] District Court's decision whether to give effect to the parties' forum-selection clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 58 (2013) (citation omitted).  Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought **or to any district or division to which all parties have**

**consented.**" 28 U.S.C. § 1404(a) (emphasis added). "[A] proper application of [Section] 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* (citations and internal quotations omitted); *see also P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("Under Section 1404(a), the court should consider the convenience of parties and witnesses and the interest of justice, with a choice of forum clause a significant factor that figures centrally in the district court's calculus.") (citations and quotations omitted). Therefore, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co.,* 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

When a forum selection clause is present, the Court must first consider whether that clause is valid (*i.e.*, enforceable). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam). "The burden is on the party resisting the enforcement of a forum selection clause to establish fraud or inequitable conduct sufficient to bar enforcement of the clause." *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) (per curiam).

Second, if a valid forum clause exists, the Court must apply a modified Section 1404(a) analysis to determine if there is a reason not to transfer the case to

the chosen forum. Traditionally, courts within the Eleventh Circuit consider the following factors in a Section 1404(a) analysis:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). But, where a valid forum selection clause is present, the Court applies a modified three (3) part test. "First, the plaintiff's choice of forum merits no weight." *Atl. Marine Const. Co.,* 571 U.S. at 51. "Second, a court . . . should not consider arguments about the parties' private interests." *Id.* at 64. It may consider only public interests. *Id.* Third, "[a] transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64 (citation omitted).

## DISCUSSION

The Fund Defendants argue that Plaintiffs agreed to a mandatory forum selection clause in Section 12.06 of the LPA, which places the forum in "the federal and state courts situated in the State of Delaware." (Doc. 43 at 6; Doc. 43-1 at 58). Thus, the Fund Defendants move for the case to be transferred to the United States District Court for the District of Delaware. (Doc. 43 at 3, 5). Plaintiffs argue that the Middle District of Florida is the correct forum because (1) the capital contribution to the Special Purpose Vehicle is a separate transaction that does not

8

fall under the Fund's LPA, and (2) the operating agreement of the Special Purpose Vehicle, rather than the Fund's LPA, controls whether the Court should transfer this case. (Doc. 60 at 13, 19). The Court finds the Fund Defendants' arguments persuasive, and the case is due to be transferred to the United States District Court for the District of Delaware.

Here, Plaintiffs do not dispute the authenticity of the LPA or whether the LPA contains a valid forum selection clause. Instead, Plaintiffs argue that they are not bound by the Fund's LPA forum selection clause for several reasons. First, Plaintiffs contend that the Fund's $1,253,888.14 capital contribution of Plaintiffs' monies to the Special Purpose Vehicle is a separate transaction not covered under the LPA.[4] (Doc. 60 at 13). Specifically, Plaintiffs argue: "*That* fraudulent transaction, facilitated by, through and with all of the named defendants, including EFSI, is the transaction or occurrence at issue in this lawsuit and no other." (*Id.* (emphasis in original)).

Plaintiffs first argument fails for numerous reasons. Notably, Section 12.06 of the LPA states that the federal and state courts situated in the State of Delaware "will have sole and exclusive jurisdiction over all claims, controversies, disputes, and actions **which in any way relate to this Agreement or the subject matter of this Agreement.**" (Doc. 43-1 at 54 (emphasis added)). Further, the LPA provides, "The parties also irrevocably waive any objections that these courts

---

[4] The Court notes that Plaintiffs' response to this issue contained an abnormal amount of extremely lengthy footnotes seemingly designed to circumvent the Court's prior Order, which granted Plaintiffs' motion to file a thirty (30) page response. (*See* Doc. 60 at 15–19; *see also* Doc. 51).

9

constitute an oppressive, unfair, or inconvenient forum and **agree not to seek to change venue on these grounds or any other grounds**." (*Id.* (emphasis added)). Applying the plain and unambiguous contract language to the facts alleged in the operative complaint, the Court finds that Plaintiffs' claim relates to the subject matter in the LPA. Plaintiffs' initial investment began with the Fund. (*See* Doc. 1 at ¶¶ 43, 44, 59, 62). Then, Plaintiffs accuse the Fund of providing false information (*id.* at ¶ 183), depriving Plaintiffs of their invested monies (*id.* at ¶ 139), misrepresenting and omitting facts that caused Plaintiffs to invest in the Fund (*id.* at ¶ 140), falsifying financial performance results (*id.* at ¶ 148), and receiving the monies from Plaintiffs and then moving the monies to the Special Purpose Vehicle (*id.* at ¶ 201). The core of Plaintiffs' claims involves the Fund and CDK Capital Partners I, LLC's decision to move capital to the Special Purpose Vehicle and decisions to restrict withdrawals. These facts demonstrate that the claims made by Plaintiffs relate to the subject matter of the Fund's LPA. Also, Section 2.07(n) of the LPA allows CDK Capital Partners I, LLC, the general partner, to organize one or more entities for the Fund, to hold securities or funds of the Fund. (Doc. 43-1 at 15). Plaintiffs take aim at CDK Capital Partners I, LLC, and its action, as general partner, to make capital contributions to the Special Purpose Vehicle. Thus, the Plaintiffs challenge the powers of the general partner under Section 2.07 of the LPA. Accordingly, Plaintiffs' first argument fails for the preceding reasons.

Second, Plaintiffs argue the operating agreement of the Special Purpose

Vehicle, rather than the Fund's LPA, controls whether the Court should transfer this case. (Doc. 60 at 13, 19). The Court finds this argument unpersuasive. Plaintiffs assert that the Fund Defendants' motion "is silent as to why the Operating Agreement of CDK Fund I SPV LLC should not be enforced given Plaintiffs' membership interest purchase. . . ." (Doc. 60 at 19). But, as stated, it is Plaintiffs' burden to show fraud or inequitable conduct sufficient to bar enforcement of the forum selection clause. *Cornett*, 465 F. App'x at 843. And, "[f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel*, 579 F.3d at 1281. Notably, Plaintiffs fail to point to any reliable authority, set of facts, or contractual language to show that the Special Purpose Vehicle's operating agreement, which Plaintiffs have not signed, supersedes the Fund's LPA. Further, Plaintiffs incorrectly state that there is a "strong presumption in favor of Plaintiffs' choice of forum." (Doc. 60 at 22); *see also Atl. Marine Const. Co.,* 571 U.S. at 51 ("[T]he plaintiff's choice of forum merits no weight[,]" in a forum selection clause analysis under Section 1404). Accordingly, the Court finds that Plaintiffs have failed to meet their burden to demonstrate that transfer is improper.

## CONCLUSION

For the reasons stated above, the Court finds that the Fund Defendants' motion to transfer venue and to dismiss for failure to state a claim (Doc. 43) is **GRANTED to the extent that the Court transfers this case to the United States District Court for the District of Delaware.** Any other relief sought in the motion (Doc. 43) is otherwise denied without prejudice. The Clerk of Court is **DIRECTED** to transfer this case to the United States District Court for the District of Delaware, terminate all pending deadlines, deny all pending motions as moot, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida, on February 19, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE